**LITE DEPALMA GREENBERG, LLC**
Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, New Jersey 07102
Telephone: 973-623-3000
Facsimile: (973) 623-0858
bgreenberg@litedepalma.com

*Attorneys for Plaintiff*

[Additional Counsel on signature page]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RUO FEN ZHANG, Individually and On Behalf of All Others Similarly Situated, | : **Civil Action No.** |
| *Plaintiff*, | : **CLASS ACTION COMPLAINT** |
| v. | : |
| CANCER GENETICS, INC., PANNA L. SHARMA, JOHN A. ROBERTS, and IGOR GITELMAN, | : **JURY TRIAL DEMANDED** |
| *Defendants*. | : |

Plaintiff Ruo Fen Zhang ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Cancer Genetics, Inc. ("Cancer Genetics" or the "Company"), analysts' reports and advisories about the Company, and information readily

obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Cancer Genetics securities between March 23, 2017 through April 2, 2018, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.     Cancer Genetics is a diagnostics company focused on the development and commercialization of proprietary genomic tests and services to improve the diagnosis, prognosis and response to treatment (theranosis) of cancer.

3.     Founded in 1999, the Company is headquartered in Rutherford, New Jersey. Cancer Genetics' securities trade on the NASDAQ Capital Market ("NASDAQ") under the ticker symbol "CGIX."

4.     On October 12, 2015, Cancer Genetics issued a press release entitled, "Cancer Genetics, Inc. Finalizes Purchase of Los Angeles-based Molecular Profiling Laboratory, Response Genetics, Inc., Adding $10-$12M in Annual Revenue and Establishing a National Clinical Sales Footprint" which announced that Cancer Genetics closed its acquisition of Response Genetics, Inc. ("Response Genetics"), a molecular profiling laboratory, on October 9, 2012.

5.     Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically,

Defendants made false and/or misleading statements and/or failed to disclose that: (i) Cancer Genetics had ineffective disclosure controls and internal controls over financial reporting; and (ii) as a result of the foregoing, Cancer Genetics' public statements were materially false and misleading at all relevant times.

6.    On April 2, 2018, after the market closed, Cancer Genetics filed its Annual Report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and year ended December 31, 2017 (the "2017 10-K"). The 2017 10-K discussed the Company's controls over financial reporting, stating in relevant part:

**Item 9A. Controls and Procedures.**

*Evaluation of Disclosure Controls and Procedures.*

We evaluated, under the supervision and with the participation of our principal executive officer and principal financial officer, the effectiveness of the design and operation of our disclosure controls and procedures (as defined in Rules 13a 15(e) and 15d-15(e) under the Securities and Exchange Act of 1934 ("Exchange Act"), as amended) as of December 31, 2017, the end of the period covered by this report on Form 10-K. ***Based on this evaluation, the principal executive officer and the principal financial officer have concluded that our disclosure controls and procedures were not effective at December 31, 2017 as a result of the material weakness in internal controls described below.*** Disclosure controls and procedures are designed to ensure that information required to be disclosed by us in the reports that we file or submit under the Exchange Act (i) is recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms, and were operating in an effective manner for the period covered by this report, and (ii) is accumulated and communicated to management, including, the principal executive officer and principal financial officer, or the person performing similar functions as appropriate, to allow timely decisions regarding required disclosures.

* * *

Because of its inherent limitations, internal control over financial reporting may not prevent or detect misstatements. Also, projections of any evaluation of effectiveness to future periods are subject to risk that controls may become inadequate because of changes in conditions or because of declines in the degree of compliance with policies or procedures. Our management assessed the effectiveness of the Company's internal control over financial reporting as of December 31, 2017. In making this assessment, our management used the criteria

set forth by the Committee of Sponsoring Organizations of the Treadway Commission ("COSO") in Internal Control-Integrated Framework (2013).

***In connection with this assessment, we identified a material weakness, as described below, in our internal control over financial reporting as of December 31, 2017.*** A material weakness is a deficiency, or a combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement for the annual or interim financial statements will not be prevented or detected on a timely basis. Because of the material weakness identified below, and based on management's assessment, as of December 31, 2017, the Company's internal control over financial reporting was not effective:

Accounting for uncollectible clinical services revenue: The Company's quarterly and year- end review procedures includes management's assessment of collectability and adjustment of its allowance for doubtful accounts. ***During the fourth quarter management revised its estimation process and as a result of the low collection patterns during the fourth quarter principally related to clinical service revenues from claims generated by the Los Angeles location, a determination was made to significantly increase the allowance for doubtful accounts to reflect this change in estimate, and our management has determined that this control deficiency constitutes a material weakness at December 31, 2017. However, the Company failed to identify that adjustments which pertained to contractual allowances and reduced expected collections of current quarter revenues should have been recorded as reductions in net revenue rather than bad debt expense.*** Accordingly, management needed to record audit adjustments to properly account for these items. Although management does perform overall review of revenue and related reserves at each reporting date, the controls designed to identify material misstatements did not operate at a sufficient level of precision to prevent or detect such errors in its determination of this significant accounting estimate.

(Emphasis added).

7.    Further, on April 2, 2018, after the market closed, Cancer Genetics issued a press release entitled "Cancer Genetics Reports Fourth Quarter and Full Year 2017, Financial Results and Provides Strategic Business Updates."  The press release discussed the fourth quarter and full year 2017 financial results, stating in relevant part:

A major area of concentrated focus during the first quarter of 2018 was the careful evaluation of the Company's accounts receivables, which had increased to approximately $16 million on the balance sheet prior to any adjustments. A significant reason for the increase was disruptions in collections in its Clinical Services business. While the Company continues with its collections efforts on all

claims, in the fourth quarter it recorded a bad debt expense of $4.4 million and wrote off $1.8 million of its accounts receivable, with a significant portion of the bad debt expense and write off related to collection issues with respect to the accounts receivable recorded subsequent to the 2015 acquisition of Response Genetics Inc. Payors have declined to reimburse the Company on certain performed Clinical services due to delays in filing its claims, the demands by payors for copies of patient medical records or diagnosis codes which have been difficult to obtain, and reimbursement challenges for certain of our next generation sequencing tests by Medicare and third-party managed care plans, among other reasons. As such, the Company has made a prudent decision to write these off in the fourth quarter. Management believes that its current outstanding accounts receivables are collectible, net of the allowance for doubtful accounts.

8.      On this news, Cancer Genetics' share price fell $0.55, or over 33.3%, to close at $1.10 per share on April 3, 2018, damaging investors.

9.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and Section 27 of the Exchange Act.

12.     Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b). Cancer Genetics' principal executive offices are located within this Judicial District.

13.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

14.    Plaintiff is a citizen of Ontario, Canada.  Plaintiff, as set forth in the attached Certification, acquired Cancer Genetics securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

15.    Defendant Cancer Genetics is incorporated in Delaware, with principal executive offices located at 201 Route 17 North, 2nd Floor, Rutherford, New Jersey 07070.  Cancer Genetics' securities trade on the NASDAQ under the ticker symbol "CGIX."

16.    Defendant Panna L. Sharma ("Sharma") served as the Company's Chief Executive Officer ("CEO") and President from May 2010 to February 2018.

17.    Defendant John A. Roberts ("Roberts") has served as the Company's Chief Operating Officer since July 2016, and as the Interim CEO since February 2018.

18.    Defendant Igor Gitelman ("Gitelman") has served as the Company's Chief Accounting Officer since February 2017.

19.    The Defendants referenced above in ¶¶16-18 are sometimes referred to herein as the "Individual Defendants."

20.    The Individual Defendants possessed the power and authority to control the contents of Cancer Genetics' SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of the Company's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with the Company, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been

disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

21.     Cancer Genetics is a diagnostics company that is focused on developing and commercializing proprietary genomic tests and services to improve the diagnosis, prognosis and response to treatment (theranosis) of cancer.

22.     On October 12, 2015, Cancer Genetics issued a press release entitled, "Cancer Genetics, Inc. Finalizes Purchase of Los Angeles-based Molecular Profiling Laboratory, Response Genetics, Inc., Adding $10-$12M in Annual Revenue and Establishing a National Clinical Sales Footprint" which announced that Cancer Genetics closed its acquisition of Response Genetics, a molecular profiling laboratory, on October 9, 2012.

### Materially False and Misleading Statements Issued During the Class Period

23.     The Class Period begins on March 23, 2017, when Cancer Genetics filed an Annual Report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and year ended December 31, 2016 (the "2016 10-K"). The 2016 10-K was signed by the Individual Defendants. The 2016 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Sharma and Roberts, stating that the financial information contained in the 2016 10-K "fairly present in all material respects the financial condition, results of operations and cash flows of the Registrant as of, and for, the periods presented in this report."

24.     In the 2016 10-K, Cancer Genetics stated, in part:

7

### Item 9A. Controls and Procedures.

*Evaluation of Disclosure Controls and Procedures.*

We evaluated, under the supervision and with the participation of our principal executive officer and principal financial officer, the effectiveness of the design and operation of our disclosure controls and procedures (as defined in Rules 13a15(e) and 15d-15(e) under the Securities and Exchange Act of 1934 ("Exchange Act"), as amended) as of December 31, 2016, the end of the period covered by this report on Form 10-K. Based on this evaluation, the principal executive officer and the principal financial officer have concluded that our disclosure controls and procedures were effective at December 31, 2016. Disclosure controls and procedures are designed to ensure that information required to be disclosed by us in the reports that we file or submit under the Exchange Act (i) is recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms, and were operating in an effective manner for the period covered by this report, and (ii) is accumulated and communicated to management, including, the principal executive officer and principal financial officer, or the person performing similar functions as appropriate, to allow timely decisions regarding required disclosures.

*Management's Report on Internal Control Over Financial Reporting.*

Our management is responsible for establishing and maintaining adequate internal control over financial reporting as defined in Rule 13a-15(f) and 15d-15(f) under the Securities Exchange Act of 1934.

The Company's internal control over financial reporting is a process designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles and includes those policies and procedures that:

- Pertain to the maintenance of records that, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the Company;
- Provide reasonable assurance that transactions are recorded as necessary to permit preparation of financial statements in accordance with generally accepted accounting principles, and that receipts and expenditures of the Company are being made only in accordance with authorizations of our management and directors; and
- Provide reasonable assurance regarding prevention or timely detection of unauthorized acquisition, use or disposition of the Company's assets that could have a material effect on the financial statements.

Because of its inherent limitations, internal control over financial reporting may not prevent or detect misstatements. Also, projections of any evaluation of

effectiveness to future periods are subject to risk that controls may become inadequate because of changes in conditions or because of declines in the degree of compliance with policies or procedures.

Our management assessed the effectiveness of the Company's internal control over financial reporting as of December 31, 2016. In making this assessment, our management used the criteria set forth by the Committee of Sponsoring Organizations of the Treadway Commission ("COSO") in Internal Control-Integrated Framework (2013).

**Based on management's assessment, as of December 31, 2016, the Company's internal control over financial reporting was effective.**

*Changes in Internal Control over Financial Reporting.*

There were no changes in our internal control over financial reporting during the three months ended December 31, 2016 that have materially affected, or are reasonably likely to materially affect, the Company's internal control over financial reporting.

(Emphasis added)

25.    On May 12, 2017, Cancer Genetics filed a Quarterly Report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2017 (the "Q1 2017 10-Q"). The Q1 2017 10-Q was signed by the Individual Defendants. The Q1 2017 10-Q contained signed certifications pursuant to SOX by Defendants Sharma and Roberts, stating that the financial information contained in the Q1 2017 10-Q "fairly present in all material respects the financial condition, results of operations and cash flows of the Registrant as of, and for, the periods presented in this report."

26.    In the Q1 2017 10-Q, Cancer Genetics stated, in part:

**Item 4. Controls and Procedures**

*Evaluation of Disclosure Controls and Procedures*

We evaluated, under the supervision and with the participation of the principal executive officer and principal financial officer, the effectiveness of the design and operation of our disclosure controls and procedures (as defined in Rules 13a15(e) and 15d-15(e) under the Securities and Exchange Act of 1934 ("Exchange Act"), as amended, as of March 31, 2017, the end of the period covered by this report on Form 10-Q. **Based on this evaluation, our President**

***and Chief Executive Officer (principal executive officer) and our Chief Operating Officer (principal financial officer) have concluded that our disclosure controls and procedures were effective at the reasonable assurance level at March 31, 2017.***

\* \* \*

*Changes in Internal Control over Financial Reporting*

***There were no changes in our internal control over financial reporting during the three months ended March 31, 2017 that have materially affected, or are reasonably likely to materially affect, the Company's internal control over financial reporting.***

(Emphasis added).

27.     On August 14, 2017, Cancer Genetics filed a Quarterly Report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended June 30, 2017 (the "Q2 2017 10-Q"). The Q2 2017 10-Q was signed by the Individual Defendants. The Q2 2017 10-Q contained signed certifications pursuant to SOX by Defendants Sharma and Roberts, stating that the financial information contained in the Q2 2017 10-Q "fairly present in all material respects the financial condition, results of operations and cash flows of the Registrant as of, and for, the periods presented in this report."

28.     In the Q2 2017 10-Q, Cancer Genetics stated, in part:

**Item 4. Controls and Procedures**

*Evaluation of Disclosure Controls and Procedures*

We evaluated, under the supervision and with the participation of the principal executive officer and principal financial officer, the effectiveness of the design and operation of our disclosure controls and procedures (as defined in Rules 13a15(e) and 15d-15(e) under the Securities and Exchange Act of 1934 ("Exchange Act"), as amended, as of June 30, 2017, the end of the period covered by this report on Form 10-Q. ***Based on this evaluation, our President and Chief Executive Officer (principal executive officer) and our Chief Operating Officer (principal financial officer) have concluded that our disclosure controls and procedures were effective at the reasonable assurance level at June 30, 2017.***

\* \* \*

*Changes in Internal Control over Financial Reporting*

**There were no changes in our internal control over financial reporting during the three months ended June 30, 2017 that have materially affected, or are reasonably likely to materially affect, the Company's internal control over financial reporting.**

(Emphasis added).

29.     On November 13, 2017, Cancer Genetics filed a Quarterly Report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended September 30, 2017 (the "Q3 2017 10-Q"). The Q3 2017 10-Q was signed by the Individual Defendants. The Q3 2017 10-Q contained signed certifications pursuant to SOX by Defendants Sharma and Roberts, stating that the financial information contained in the Q3 2017 10-Q "fairly present in all material respects the financial condition, results of operations and cash flows of the Registrant as of, and for, the periods presented in this report."

30.     In the Q3 2017 10-Q, Cancer Genetics stated, in part:

**Item 4. Controls and Procedures**

*Evaluation of Disclosure Controls and Procedures*

We evaluated, under the supervision and with the participation of the principal executive officer and principal financial officer, the effectiveness of the design and operation of our disclosure controls and procedures (as defined in Rules 13a15(e) and 15d-15(e) under the Securities and Exchange Act of 1934 ("Exchange Act"), as amended, as of September 30, 2017, the end of the period covered by this report on Form 10-Q. **Based on this evaluation, our President and Chief Executive Officer (principal executive officer) and our Chief Operating Officer (principal financial officer) have concluded that our disclosure controls and procedures were effective at the reasonable assurance level at September 30, 2017.**

\* \* \*

*Changes in Internal Control over Financial Reporting*

**There were no changes in our internal control over financial reporting during the three months ended September 30, 2017 that have materially affected, or are reasonably likely to materially affect, the Company's internal control over financial reporting.**

(Emphasis added).

31.     The statements referenced in ¶¶23-30 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Cancer Genetics had ineffective disclosure controls and internal controls over financial reporting; and (ii) as a result of the foregoing, Cancer Genetics' public statements were materially false and misleading at all relevant times.

## The Truth Begins to Emerge

32.     On April 2, 2018, after the market closed, Cancer Genetics filed its Annual Report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and year ended December 31, 2017. The 2017 10-K addressed the Company's controls over financial reporting, stating in relevant part:

**Item 9A. Controls and Procedures.**

*Evaluation of Disclosure Controls and Procedures.*

We evaluated, under the supervision and with the participation of our principal executive officer and principal financial officer, the effectiveness of the design and operation of our disclosure controls and procedures (as defined in Rules 13a 15(e) and 15d-15(e) under the Securities and Exchange Act of 1934 ("Exchange Act"), as amended) as of December 31, 2017, the end of the period covered by this report on Form 10-K. ***Based on this evaluation, the principal executive officer and the principal financial officer have concluded that our disclosure controls and procedures were not effective at December 31, 2017 as a result of the material weakness in internal controls described below.*** Disclosure controls and procedures are designed to ensure that information required to be disclosed by us in the reports that we file or submit under the Exchange Act (i) is recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms, and were operating in an effective manner for the period covered by this report, and (ii) is accumulated and communicated to management, including, the principal executive officer and principal financial officer, or the person performing similar functions as appropriate, to allow timely decisions regarding required disclosures.

* * *

Because of its inherent limitations, internal control over financial reporting may not prevent or detect misstatements. Also, projections of any evaluation of effectiveness to future periods are subject to risk that controls may become inadequate because of changes in conditions or because of declines in the degree of compliance with policies or procedures. Our management assessed the effectiveness of the Company's internal control over financial reporting as of December 31, 2017. In making this assessment, our management used the criteria set forth by the Committee of Sponsoring Organizations of the Treadway Commission ("COSO") in Internal Control-Integrated Framework (2013).

***In connection with this assessment, we identified a material weakness, as described below, in our internal control over financial reporting as of December 31, 2017.*** A material weakness is a deficiency, or a combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement for the annual or interim financial statements will not be prevented or detected on a timely basis. Because of the material weakness identified below, and based on management's assessment, as of December 31, 2017, the Company's internal control over financial reporting was not effective:

Accounting for uncollectible clinical services revenue: The Company's quarterly and year- end review procedures includes management's assessment of collectability and adjustment of its allowance for doubtful accounts. ***During the fourth quarter management revised its estimation process and as a result of the low collection patterns during the fourth quarter principally related to clinical service revenues from claims generated by the Los Angeles location, a determination was made to significantly increase the allowance for doubtful accounts to reflect this change in estimate, and our management has determined that this control deficiency constitutes a material weakness at December 31, 2017. However, the Company failed to identify that adjustments which pertained to contractual allowances and reduced expected collections of current quarter revenues should have been recorded as reductions in net revenue rather than bad debt expense.*** Accordingly, management needed to record audit adjustments to properly account for these items. Although management does perform overall review of revenue and related reserves at each reporting date, the controls designed to identify material misstatements did not operate at a sufficient level of precision to prevent or detect such errors in its determination of this significant accounting estimate.

(Emphasis added).

33.    Further, on April 2, 2018, after the market closed, Cancer Genetics issued a press release entitled "Cancer Genetics Reports Fourth Quarter and Full Year 2017, Financial Results

and Provides Strategic Business Updates." The press release discussed the fourth quarter and

full year 2017 financial results, stating in relevant part:

> A major area of concentrated focus during the first quarter of 2018 was the careful evaluation of the Company's accounts receivables, which had increased to approximately $16 million on the balance sheet prior to any adjustments. A significant reason for the increase was disruptions in collections in its Clinical Services business. While the Company continues with its collections efforts on all claims, in the fourth quarter it recorded a bad debt expense of $4.4 million and wrote off $1.8 million of its accounts receivable, with a significant portion of the bad debt expense and write off related to collection issues with respect to the accounts receivable recorded subsequent to the 2015 acquisition of Response Genetics Inc. Payors have declined to reimburse the Company on certain performed Clinical services due to delays in filing its claims, the demands by payors for copies of patient medical records or diagnosis codes which have been difficult to obtain, and reimbursement challenges for certain of our next generation sequencing tests by Medicare and third-party managed care plans, among other reasons. As such, the Company has made a prudent decision to write these off in the fourth quarter. Management believes that its current outstanding accounts receivables are collectible, net of the allowance for doubtful accounts.

34.    On this news, Cancer Genetics' share price fell $0.55, or over 33.3%, to close at

$1.10 per share on April 3, 2018, damaging investors.

35.    As a result of Defendants' wrongful acts and omissions, and the precipitous

decline in the market value of the Company's securities, Plaintiff and other Class members have

suffered significant losses and damages.

## ADDITIONAL SCIENTER ALLEGATIONS

36.    On December 8, 2017, Cancer Genetics announced the pricing of a registered

direct offering scheduled to close on December 12, 2017 (the "December Offering"), stating in

relevant part:

Cancer Genetics Prices $7 Million Registered Direct Offering

RUTHERFORD, N.J., Dec. 08, 2017 (GLOBE NEWSWIRE) -- Cancer Genetics, Inc. (Nasdaq:CGIX), a leader in enabling precision medicine for oncology through molecular markers and diagnostics, today announced the pricing of a registered direct offering of 3,500,000 units at a purchase price of $2.00 per unit.

14

The gross proceeds are expected to be $7.0 million, prior to deducting any placement agent fees or other offering-related expenses.

H.C. Wainwright & Co. is acting as the exclusive placement agent for the offering.

Each unit consists of one share of Cancer Genetics common stock and one warrant to purchase a share of common stock at an exercise price of $2.35 per share. Each warrant will be exercisable 6 months following the date of issuance and will expire 18 months from the date of issuance.

The closing of the offering is expected to take place on or about December 12, 2017, subject to the satisfaction of customary closing conditions.

The securities are being offered by Cancer Genetics pursuant to a "shelf" registration statement on Form S-3 that was filed and declared effective by the Securities and Exchange Commission ("SEC") and the base prospectus contained therein (File No. 333-218229). The offering of the securities will be made only by means of a prospectus. A prospectus supplement and accompanying base prospectus relating to the securities being offered will be filed with the SEC. Copies of the final prospectus supplement and accompanying base prospectus may be obtained, when available, on the SEC's website at http://www.sec.gov or by contacting H.C. Wainwright & Co., LLC at 430 Park Avenue, 4th Floor, New York, NY 10022, by phone at 646-975-6996 or e-mail at placements@hcwco.com.

This press release shall not constitute an offer to sell or a solicitation of an offer to buy these securities, nor shall there be any sale of these securities in any state or other jurisdiction in which such offer, solicitation or sale would be unlawful prior to the registration or qualification under the securities laws of any such state or other jurisdiction.

37.    The Company decided to reveal the $4.4 million bad debt and write off $1.8 million in accounts receivables after the December Offering so that it could raise $7 million before issuing the negative news.

38.    On February 1, 2018, Defendant Sharma resigned as CEO effective, February 2, 2018.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

39.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or

otherwise acquired Cancer Genetics securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns any entity in which Defendants have or had a controlling interest, and any judicial officer who handles this matter, and the immediate families and staff of such judicial officer(s).

40.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Cancer Genetics securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Cancer Genetics or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

41.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

42.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

43.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Cancer Genetics;

- whether the Individual Defendants caused Cancer Genetics to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Cancer Genetics securities during the Class Period were artificially inflated because of Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

44.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

45.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Cancer Genetics securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Cancer Genetics securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

46.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

47.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

48.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

49.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

50.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to

defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Cancer Genetics securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Cancer Genetics securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

51.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Cancer Genetics securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Cancer Genetics' finances and business prospects.

52.    By virtue of their positions at Cancer Genetics, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In

addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

53.   Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Cancer Genetics, the Individual Defendants had knowledge of the details of Cancer Genetics' internal affairs.

54.   The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Cancer Genetics. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Cancer Genetics' businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Cancer Genetics securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Cancer Genetics' business and financial condition that were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Cancer Genetics securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

55.   During the Class Period, Cancer Genetics securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares

of Cancer Genetics securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Cancer Genetics securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Cancer Genetics securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

56.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

57.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

58.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

59.    During the Class Period, the Individual Defendants participated in the operation and management of Cancer Genetics, and conducted and participated, directly and indirectly, in the conduct of Cancer Genetics' business affairs.  Because of their senior positions, they knew

the adverse non-public information about Cancer Genetics' misstatement of income and expenses and false financial statements.

60.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Cancer Genetics' financial condition and results of operations, and to correct promptly any public statements issued by Cancer Genetics that had become materially false or misleading.

61.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Cancer Genetics disseminated in the marketplace during the Class Period concerning Cancer Genetics' results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Cancer Genetics to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Cancer Genetics within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Cancer Genetics securities.

62.     Each of the Individual Defendants, therefore, acted as a controlling person of Cancer Genetics.  By reason of their senior management positions and/or being directors of Cancer Genetics, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Cancer Genetics to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Cancer Genetics and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

22

63.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Cancer Genetics.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.


Dated: April 12, 2018                    **LITE DEPALMA GREENBERG LLC**


                                         */s/ Bruce D. Greenberg*
                                         Bruce D. Greenberg
                                         570 Broad Street, Suite 1201
                                         Newark, NJ 07102
                                         Telephone: (973) 623-3000
                                         Facsimile: (973) 623-0858
                                         bgreenberg@litedepalma.com

**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com
hchang@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
(212) 697-6484
peretz@bgandg.com

*Attorneys for Plaintiff*

## LOCAL CIVIL RULE 11.2 CERTIFICATION

Pursuant to Local Civil Rule 11.2, I hereby certify that the matter in controversy is related to the following action pending in this Court: *Phetteplace v. Cancer Genetics, Inc. et al.*, Civil Action No. 2:18-cv-05612 (D.N.J.).

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: April 12, 2018

**LITE DEPALMA GREENBERG LLC**

*/s/ Bruce D. Greenberg*
Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
bgreenberg@litedepalma.com

**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
jalieberman@pomlaw.com
ahood@pomlaw.com
hchang@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Email:  pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
peretz@bgandg.com

***Attorneys for Plaintiff***